341 P.2d 201

**LONE STAR URANIUM & DRILLING COMPANY, a corporation, Plaintiff and Appellant,**

**v.**

**Leland J. DAVIS and Barbara N. Davis, his wife, Ray Davis and Mary C. Davis, his wife, Defendants, Respondents and Cross-Appellants.**

No. 8986.

Supreme Court of Utah.

July 1, 1959.

H. G. Metos, Tom Metos, Salt Lake City, for appellant.

S. Rex Lewis, Provo, for respondents.

WAHLQUIST, District Judge.

The plaintiff sued for the return of $2,500 paid on an option-purchase agreement involving 41 mining claims. The defendants counterclaimed for specific performance or, in lieu thereof, damages. The trial court denied recovery to both parties. Both now contend they are entitled to recover as a matter of law.

The plaintiff contends that the trial court's findings of fact lead, in strict logical steps, to only a conclusion of law that the plaintiff is entitled to a judgment against the defendants for $2,500, together with interest from the date of the demand, plus costs.

It is agreed that on May 5, 1954, the parties entered into a written agreement. After naming the parties and identifying the 41 lode mining claims in question, it provides insofar as material here:

"For and in consideration of Two Thousand Five Hundred ($2,500) Dollars delivered unto Maxwell Bentley, agent for Sellers, receipt of which is hereby acknowledged by the Sellers, the Sellers do hereby agree to sell and the Buyer does hereby agree to buy the above listed property according to the following terms and conditions:

"1. The Sellers hereby acknowledge that up until the present time there has been an outstanding lease on the first nineteen (19) claims named above in favor of James Mallery and Wesley Edwards which is now in the process of termination because of default by the above named Mallery and Edwards in said lease and that the Sellers are using their best efforts to retake possession of said claims and finally and absolutely terminate the above mentioned lease.

"2. Now the condition of this agreement is that in the event the Sellers

are able to retake possession of said claims heretofore leased and finally and absolutely terminate said lease to the satisfaction of the Buyer on or before six (6) months from date of this agreement, then at such time the Buyer shall pay over unto the Sellers the sum of Forty-five thousand, Five hundred Dollars ($45,500) upon delivery by the Sellers of sufficient quit-claim deeds conveying all of the Sellers' right, title and interest in and to all of the above mentioned forty-one (41) claims together with an abstract of title showing clear record title to said claims to be vested in the Sellers, * * *.

"3. In the event the Sellers have not retaken possession of said claims and finally and absolutely terminated the heretofore mentioned lease to the satisfaction of the Buyer on or before six (6) months from date of this agreement, then the Two Thousand Five Hundred ($2,500) Dollars heretofore paid unto the Sellers' agent shall be returned unto the Buyer, or at the option of the Buyer, the time within which the Sellers shall have to retake possession of the property from the above named Lessees, Mallery and Edwards, and finally and absolutely terminate said lease, may be extended for an additional period of time not to exceed one (1) year from date of this agreement. In the event of the return of the Two Thousand Five Hundred ($2,500) Dollars at the end of the extended period of time which the Buyer may elect to give unto the Sellers as above provided due to the Sellers not having been able to retake possession of said property and terminate the heretofore mentioned lease, this agreement shall become void and the respective parties hereto shall be released completely from all obligations contained herein.

"The original of this contract, and a good and sufficient executed Quit Claim Deed shall be placed in escrow with First National Bank of Moab. The aforementioned Forty-five Thousand Five Hundred ($45,500) Dollars shall be paid to said First National Bank of Moab for said Sellers and upon said payment being made, said Buyer is entitled and shall be delivered the Quit Claim Deed."

It is further undisputed that the defendants filed an action in the District Court of San Juan County against Mallery and Edwards and that on May 21, 1955, which is after the six months' period, that court issued an order containing:

"2. The Defendants, Mallery and Edwards shall be and are hereby awarded judgment against the plaintiffs in the sum of $5,000.00 and that said judgment should be and is hereby ordered to be a first lien on all of the

mining claims covered by the lease, said sum to be recovered by an order of sale to be issued by the court in said action in the same manner as lands which are sold under foreclosure."

On July 11, 1955, an amended decree was entered by the same court amending paragraph two to read as follows:

"That the lease agreement concerning the following described claims entered into on or about the 6th day of August, 1953, between Dwight Oliver and Frank Buss as lessees was cancelled, terminated and declared forfeited by the willful and intentional action of the present lessor, plaintiff Leland Davis, and is hereby declared to be terminated and forfeited. That the defendants should be and are hereby awarded judgment against the plaintiff in the amount of $5,000.00 and that said judgment should be and is hereby ordered to be a first lien on all of the mining claims covered by the lease, said sum to be recovered by an order of sale to be issued by the court in this action in the same manner as lands which are sold under foreclosure."

There is no evidence in the record that the cloud on these 19 claims was removed even during the full year's time after May 5, 1955; in fact, the only evidence regarding the removal of the cloud is one of the defendant's statement that it was removed some time in 1956. The only abstract received in evidence concerns 22 of the other claims and it showed title of 12 of them to be in a person not mentioned in the written agreement.

The plaintiff contends that the event which the written agreement provides for did in fact occur, and according to its very terms they are entitled to the return of their $2,500.

The trial court found, inter alia, as follows:

"2. That on or about the 5th day of November, 1954, the defendants entered into a written agreement, a copy of which is attached to plaintiff's complaint and designated therein 'Exhibit A' and by reference made a part hereof, and under the terms of said agreement defendants agreed to sell to the plaintiff the lode mining claims described in said agreement and on said date plaintiff paid to the defendants the sum of $2500 pursuant to the terms of said agreement.

"3. That under the provisions of said agreement, the defendants agreed to terminate an outstanding lease on 19 claims described in said lease, which lease was in favor of James Mallery and Wesley Edwards, and deliver to the plaintiff an abstract of title showing clear record title to said claims to be vested in the defendants and pos-

session of said claims on or before six months from the date of the execution of said agreement, and that if the defendants failed to terminate said lease and deliver an abstract of title showing clear record to said claims and possession of the same, then, in that event, the said sum of $2,500 shall be repaid to the plaintiff.

"4. That defendants failed to terminate the outstanding lease on said claims and deliver an abstract of title showing a clear record title to be vested in the defendants or possession of said claims within the period of six months as provided for in said agreement, and that during said period of time said claims were in litigation between the defendants herein and said James Mallery and Wesley Edwards, and that a decree of the court made and entered in the District Court of San Juan County, State of Utah on May 21, 1955, and amended on July 11, 1955, is attached to plaintiff's complaint and by reference is made a part hereof, showing that said claims were subject to said lease and to a lien in favor of said James Mallery and Wesley Edwards in the sum of $5,000.00.

"5. That after the expiration of said six months, plaintiff demanded from the defendants the return of said sum of $2,500 but defendants have refused to pay the same.

"6. That the defendants. did not furnish to the plaintiff an abstract of title showing said mining claims to be free and clear of all liens and encumbrances as provided in said agreement within the period provided for therein, and that defendants were unable to perform the terms of said agreement.

"7. The court finds that defendants' allegations set forth in its cross-complaint against the plaintiff is not supported by the evidence and that the alleged expenditures, if any, were made by the defendants for surveying, abstracts, title opinions, geological services, legal services, services for their own time, were expenditures not provided for under said agreement between the plaintiff and defendants and are not chargeable to the plaintiff, and that the defendants are not entitled to a decree of specific performance of said agreement against the plaintiff."

There is adequate evidence to support these findings. Unquestionably they lead to the conclusion that the plaintiff is entitled to the return of its $2,500.

This court has no desire to permit a case to be determined on a mere play on words or an unfortunate omission of some finding of fact; therefore, the record has been closely scrutinized in an endeavor to find any hypothesis which would permit the substance of all the conclusions of law and the

180

findings as rendered to remain. There is none that has any support in the evidence. The situation appears similar to that encountered by this court in Parrott Bros. Co. v. Ogden City, 50 Utah 512, 167 P. 807. There the court said:

"The record clearly shows that, had the court rendered its judgment in accordance with its findings above set forth, the judgment for the appellant would have been for $1,742.98 rather than for $671.58, with interest from August 5, 1914; and appellant assigns to be, and now contends that the court's conclusions of law and failure to render judgment in accordance with its findings of fact were error. We must agree with this contention. It is fundamental that the conclusions of law must be predicated upon and find their support in the findings of fact, and the judgment must follow the conclusions of law; and where, as here, the conclusions of law are so palpably at variance with the findings, there is no alternative but to order and require the lower court to set aside its erroneous conclusions of law and substitute conclusions that will entitle the appellant to, and enter, a judgment in accordance with its express findings of fact."

The defendants have contended that inasmuch as the plaintiff never tendered the $45,500 in question to them no cause of action could accrue. The authorities they cite in this regard are principally cases where concurrent acts are to be done. Some concern matters that were not true conditions precedent to an obligation to pay a purchase price. The contract in this case is clear and unambiguous. The plaintiff was under no obligation to tender the $45,500 and then wait and hope that the defendants would clear off the title and deliver proper abstracts.

The defendants also refer this court to some cases where a seller is not bound to clear off clouds on his title until the purchaser tenders performance. In some instances this may be true, but certainly the parties, as was done here, may control the matter by proper provisions in their contract.

The defendants' counterclaim is based on the theory that the buyer had exercised the option provided for in the contract, extending the period of performance for one year, or at least until after August 17, 1955, the date when the buyer announced an intent not to proceed with the purchase. There is evidence that during May and early June, 1955, the buyer indicated a willingness to proceed with the purchase if the sellers would clear the title and provide abstracts as per contract. None of these evidences of intent refer to the provision in the contract permitting the

buyer to elect to extend the period, nor do they set the time for performance. There is also evidence that the sellers had informed the buyer that they had performed and were ready to proceed with the sale when unquestionably, at least 19 of the claims were subject to a sale in the nature of a foreclosure for the collection of a lien against them of $5,000. It was not until over 30 days after this announcement by the sellers that the buyer demanded the return of its money. The trial court had this evidence and other before him on the counterclaim. The findings of fact, conclusions of law and judgment are consistent as to the counterclaim. They reflect the trial court did not find that the buyer breached the contract as alleged in the counterclaim. This finding by a trier of the facts should not be disturbed by the Appellate Court.[1]

From the above discussion it is plain that upon the basis of the facts the plaintiff is entitled to the return of its $2,500 with interest as provided by law. It is, therefore, necessary that the cause be remanded with instructions to so correct the conclusions of law and to enter judgment accordingly. It is so ordered. Costs to plaintiff (appellant).

CROCKETT, C. J., and WADE, HENRIOD, and McDONOUGH, JJ., concur.

WORTHEN, J., deceased.

[1]. Jensen v. Howell, 75 Utah 64, 282 P. 1034.